STATE OF MISSOURI, Respondent, v. JIM HAYES
et al., Appellants.

### Springfield Court of Appeals, April 3, 1911.

CRIMINAL LAW: Gaming: Sufficiency of Evidence. In a prose-
cution for gaming it was shown by the state's witness, a police-
man, that he forced his way past a colored porter into a room
where defendants were playing cards; that another party, a
Mr. Cardwell, tried to prevent him going into the room and
offered to "fix it" with the witness and the chief of police; that
when he stepped into the room where the game was in progress,
one of the men in the game said, "My God, there's a cop;"
whereupon they all arose hastily from the table, gathered up
their poker chips and vanished through a side door. Later the
defendants came back and in their presence Mr. Cardwell again
offered to "fix it up." Held, that the evidence was sufficient to
justify a verdict of guilty.

Appeal from Greene Circuit Court.—*Hon. Alfred Page,*
Judge.

AFFIRMED.

*Talma S. Heffernan* and *O. E. Gorman* for appel-
lants.

*J. C. West* and *S. M. Wear* for respondent.

COX, J.—This appeal is from a conviction for
gambling. The information is sufficient, the instruc-
tions are unobjectionable, and the only question to be
determined here is the sufficiency of the testimony to
sustain the verdict.

The fact that defendants were engaged in a game
of cards is proven conclusively. This game was either
an innocent one or was played for money or property.
The proof that the parties were gambling in the game
depends upon circumstances and the rule in such cases
is that the circumstances relied upon must point so
strongly to the guilt of defendants as to exclude every

reasonable theory of their innocence. Does the evidence in this case meet that requirement? The only witness for the state was a policeman who entered the room where the game was being played. The evidence shows that the officer, to reach this room, passed through the lobby of the Metropolitan Hotel in the City of Springfield into a pool room, then through a door in the rear of the pool room into a hall some sixty to eighty feet long. From this hall a door opened into room 200. This door he found open about one foot and a colored porter standing inside the room with his back to the door. When the porter heard the policeman coming he attempted to close the door, but the policeman thrust his club in and prevented it. He then entered the room which had the appearance of a room in which lunches were served. Adjoining this room was another with a sort of cheesecloth partition between them. The card game was in the latter room. In the lunch room the policeman met one Cardwell who attempted to prevent him from going into the room where the game was in progress and offered to fix it up with the chief—evidently meaning the Chief of Police—and wanted to fix it up with the witness, but the witness went on into the other room. When he stepped in there he saw five or six men sitting around a table playing cards and poker chips lying on the table in front of each player. Upon the appearance of the policeman in the room one of the players said "My God! there's the cop." Whereupon they all arose hastily from the table, gathered up their poker chips and vanished through a side door. These two defendants came back into the lunch room and in their presence Mr. Cardwell again offered to fix it up. This was substantially the evidence for the state. One defendant testified in his own behalf and denied having played at all.

We think there could be but one conclusion reached from this testimony. We think the location and arrangement of the room and the fact that Cardwell

and the porter tried to prevent the policeman from entering the room and the subsequent offer of Cardwell to the policeman, in the presence of defendants, to fix it up, clearly shows that these defendants understood that Cardwell and the porter were to protect them against intruders while the game was being played. Why should they need any protection? When the policeman stepped in one of the players said "My God! there's the cop," and they all, including these defendants, immediately absconded, taking their poker chips with them. If the game was an innocent one why the exclamation of horror at the entrance of a policeman? The appearance of a policeman would not strike terror to the heart of an innocent man; nor would a man engaged in an innocent game be prompted to drop his cards, grab his poker chips and scurry from the room as soon as an officer of the law should appear.

A game of cards may be innocent or a violation of the law according as it is played for amusement or for money or property. This game was either innocent or the parties playing it were guilty of gambling as charged. How could this question be determined more accurately than by the actions of the parties to the game? It may be said that the poker chips might have been used as counters only in an innocent game. So they might, but were they? If they were it would have been easy of explanation, but there is no explanation of that character. It may be said that defendants were not called upon to explain. Grant that. Neither were they called upon to run when discovered, but they did. It is the guilty who flee when detection seems imminent. If there were no wrong to detect there would be no cause for flight.

If a man, while in an attempt to open the door of his neighbor's house in the nighttime, should be discovered by a policeman he could explain his conduct by showing that he had a right to enter the house, but if instead of doing that he should exclaim "My God!

there's the cop," throw away the key to the door and make his escape; his conduct would explain his intention and show beyond any doubt that his motive in trying to enter the house of his neighbor was wrongful and not innocent. So in this case the character of the game is explained beyond any question by the conduct of the parties themselves.

No man should be convicted on mere suspicion. On the other hand jurors are not required on entering the jury box to throw away their common sense, and when we take a common sense view of this testimony, no one could listen to the narration of the facts shown in this case and reach any other conclusion than that these defendants were guilty.

We are cited to the case of State v. Brooks, 94 Mo. App. 57, 67 S. W. 942, as an authority to sustain the position that a demurrer to the evidence in this case should have been sustained. That case lacks all of the incriminating circumstances that are present in this case. In that case all the evidence showed was a game with poker chips on the table and nothing to show the character of the game such as we have in this case; hence, that case is not authority in this one.

Judgment affirmed. All concur.