## Conley v. Commonwealth.

(Decided June 27, 1928.)

### Appeal from Johnson Circuit Court.

1. Homicide.—Evidence held sufficient to sustain conviction for manslaughter by striking deceased on the head with a pistol.
2. Homicide.—In homicide case, where self-defense is interposed as excuse for the killing, deceased's general reputation is admissible for the bearing it may have on questions as to who brought on the difficulty and reasonable grounds for defendant's belief that he was, at the time, in danger of death or great bodily harm.
3. Criminal Law.—Where six witnesses for defendant in homicide case involving issue of self-defense testified that deceased was a

dangerous man,. and no one said that he was not, it was not prejudicial error to exclude further evidence on that subject.

4. Homicide.—Where defendant was permitted to testify that he left state after killing deceased because of fear that deceased's people would kill him, his testimony that he went away because his mother and brother told him he had better go because deceased's people might kill him held properly excluded.

5. Homicide.—In prosecution for murder by striking deceased on the head with a pistol, instruction on involuntary manslaughter held properly refused, since one is presumed to intend consequences of an act done recklessly and in disregard of human life and committed under circumstances calculated to endanger life.

6. Homicide.—Where defendant admitted striking deceased on the head with a pistol, and that death resulted from wounds so inflicted, fact that pistol used as a club was deadly weapon held not only proved but demonstrated, as against defendant's contention that he was entitled to a directed acquittal because commonwealth introduced no evidence to show that pistol was used as a deadly weapon.

7. Criminal Law.—Under Criminal Code of Practice, sec. 281, Court of Appeals cannot review trial court's action in passing on qualification of jurors in criminal case.

8. Criminal Law.—Any error in overruling defendant's challenge of juror for cause was harmless, where such juror was peremptorily challenged by defendant, and there was nothing to show that in so doing defendant so reduced number of his peremptory challenges that he was required, as a result, to go to trial before a jury, to some members of which he objected. .

A. F. BYRD and W. J. WARD for appellant.

J. W. CAMMACK, Attorney General, and J. M. GILBERT, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER DRURY—
Affirming.

On September 28, 1927, Harry Conley killed Add Hitchcock by striking him on the head with a pistol. Conley and others were charged by indictment with murder. On the trial, Conley was found guilty of manslaughter, and his punishment fixed at confinement in the penitentiary for 21 years. Both of these men were single men. The deceased was about 26 years old, and the defendant about 22. They were acquainted with each other, and lived not far apart, but there had been no particular intimacy between them. A carnival or street fair was in progress in Paintsville. Conley was preparing to attend the carnival. In dressing himself for the evening, Con-

ley put in one of his pockets a pint of whisky, in another a .32 special revolver, and tucked a $2 bill in his shirt pocket. On his way to the carnival, at a place called "The Narrows," Conley came upon a car parked on the roadside in the gloaming,·and in or about this car were Add Hitchcock, another man, and a woman referred to in appellant's brief as a questionable character, by name of "Coffee." Hitchcock was drinking. He asked Conley for a drink. Conley produced his pint. Hitchcock took a drink from it, and then put the bottle in his own pocket, and, reaching over Conley's shoulder, took from him this $2 bill. These parties had some trouble, and "Coffee" ran. There were then two men in the car with Conley. He came on to Paintsville, and got two more of his friends, and they drove to the carnival grounds, and parked their car near the gate.

A witness who met the party near the gate said they asked him where Hitchcock was, and he told them he did not know, and, taking Conley aside, he advised him that "he had better lay off Add Hitchcock or he would get into trouble." Whereupon Conley said he was going to get even with the G—— d—— s—— of a b——. According to the evidence for the commonwealth, Conley and his party then entered the carnival grounds. It was raining. The shows were closed, and before long Hichcock appeared, whereupon Conley ran up behind him and struck him on the head with his revolver. Hitchcock fell like a beef. Conley then, standing astride the prostrate body of Hitchcock, struck him on the head with his pistol three more times, then turned, and, calling out "Gangway," ran through the opening which the crowd made to his car, jumped in it, and left. The next day he and one of his party went to Florida, where they remained for some months. Hitchcock was picked up and taken to a hospital, where he died shortly thereafter, without regaining consciousness.

Conley admits striking Hitchcock,. but says that, at the time he did so, Hitchcock was advancing on him with a knife, and endeavoring to cut him, and had cut his coat, and that he struck him in his necessary self-defense, with no idea or intention of killing him, and that he did not strike him after he fell. He claims he only struck him twice, and that Hitchcock did not fall until he hit him the second time. The jury did not believe him. The undertaker who prepared Hitchcock's body for burial said that

there were two gashes on the top of Hitchcock's head and one on the forehead, and that Hitchcock's skull was burst. In his efforts to secure a reversal, Conley insists that the verdict of the jury was not sustained by the evidence, and was the result of passion and prejudice on the part of the jury, but we find so little merit in this contention that we will not discuss it.

He complains of the action of the court in receiving and excluding evidence. Conley sought to prove that Hitchcock was a dangerous character and had a bad reputation for peace and good order, and he had brought out that fact in his cross-examination of three witnesses introduced by the commonwealth. He then introduced three witnesses in his own behalf on that feature, and offered to introduce others, whereupon the commonwealth objected, and in sustaining the objection the court said, ''The court sustained the objection on the ground that six or seven witnesses have been introduced on that question.'' We are willing to admit that it is permissible to prove the general reputation of the deceased in a case of homicide where self-defense is interposed as an excuse for the killing, for the bearing it may have upon the question as to who brought on the difficulty, and also on the question of the reasonable grounds for the belief of the defendant that he was at that time in danger of death or great bodily harm. One would naturally act quicker and on less provocation in the face of a threatening attitude on the part of a dangerous and bad character than on that of a man who had the reputation of being peaceable and law-abiding, but after six men had testified that the deceased was a dangerous man, and no one had said that he was not, we cannot conceive that it was prejudicial error to exclude further evidence on that subject. The dangerous character of the deceased was not disputed.

Conley, in an effort to explain his flight, said that he went to Florida because his mother and brother had told him he had better go off for a while; that Hitchcock's people might kill him. The court sustained an objection to that, which was properly done, because Conley should not be allowed to testify to what his mother and brother told him. Then he was asked and permitted to testify that Hitchcock's father was living, and he had four or five brothers, and, after that, he was asked why he went to Florida, and he said: ''I was afraid they would kill me.'' The court admitted his last statement. That left Conley no cause to complain. In his testimony he said

he did not intend to kill Hitchcock, and he insists he should have had an instruction on involuntary manslaughter, but one is presumed to intend the consequences of an act done recklessly and in disregard of human life, and committed under circumstances calculated to endanger life, and, if death results, it cannot be said that it was involuntary manslaughter. The case of Maulding v. Com., 172 Ky. 370, 189 S. W. 251, is a complete answer to this contention. See, also, Sparks v. Com., 66 Ky. (3 Bush), 111, 96 Am. Dec. 196, and Ellison v. Com., 12 Ky. Op. 665. Conley intended to strike Hitchcock, and that intention distinguishes this case from Ewing v. Com., 129 Ky. 237, 111 S. W. 352, 33 Ky. Law Rep. 749.

Conley insists that while a pistol, if used as a pistol, is a deadly weapon, yet, if used not as a pistol, but as a club, it may or may not be a deadly weapon, according to the circumstances under which it is used, and the strength of the man who is using it. He contends that, as the commonwealth introduced no evidence to show that this pistol as used was a deadly weapon, he was entitled to a directed acquittal. Conley admits striking Hitchcock with the pistol, and it is admitted that from the wound so inflicted Hitchcock died, so whether or not this pistol as used was a deadly weapon has not only been proven, it has been demonstrated.

In the selection of the jury, one juror was called who, upon his examination said that he had formed and expressed an opinion in the case from talking to his stepson, one of the witnesses for the commonwealth. Conley challenged this juror for cause. The court overruled the defendant's challenge because the juror stated that he could try the case on the evidence and instruction of the court, and would not be influenced by the opinion which he had both formed and expressed. Conley excepted to the ruling of the court, and, by the exercise of one of his peremptory challenges, ridded himself of this juror. He claims that overruling his challenge for cause was error. This court has repeatedly held, under section 281 of the Criminal Code, that the trial court's action in passing upon the qualification of jurors cannot be reviewed by us. If this were a matter we could review, we would have to hold the defendant was not prejudiced because he excused the juror himself, peremptorily, and there is nothing to show that in so doing he so reduced the number of his peremptory challenges that he was required, as a

result, to go to trial before a jury, to some members of which he objected. See Webb v. Com., 223 Ky. 424, 3 S. W. (2d) 1080. His rights could not possibly have been prejudiced.

The judgment is affirmed.

The whole court sitting.