## Roaden v. Commonwealth.

(Decided March 14, 1933.)

C. B. UPTON and R. L. POPE for appellant.
BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

The grand jury of Whitley county returned an indictment against Claude Roaden, accusing him of the crime of feloniously breaking and entering into the dwelling house of W. R. Day and stealing and carrying away therefrom, certain household goods and numerous other articles of personal property. A trial was had and resulted in conviction of defendant and sentencing him to five years in the penitentiary. He appeals.

A motion and grounds for a new trial was filed in which numerous alleged errors were assigned for grounds for reversal, but none of which were very earnestly stressed in brief by counsel for defendant, except that there was no evidence to support the verdict of the jury, and the insufficiency of the search warrant.

The facts produced for the commonwealth are in substance these:

W. R. Day and his wife, who lived in the city of Corbin, Ky., on August 21, 1931, left their home and went to Frankfort, Ky. They stated that they left their home locked up and on their return on the morning of the 23rd of August, they found that their dwelling house had been broken into and numerous articles of household goods, wearing apparel, groceries, bed clothing, a watch, fountain pen, and numerous other articles of personal property had been taken therefrom. The front door, which they had left locked, had been forced, and was standing about six inches open. Day testified that on the evening that they left their home and while going along the street in the city of Corbin, he saw the defendant and defendant asked him if he was leaving town, and he, Day, told him that he was.

About four or five weeks after the house had been broken into, Day received information that his watch, which had been taken from his house, was in the possession of a man named Hopper, who was a merchant

in the city of Corbin. It developed that Hopper had received the watch from a man named Hughes, who also lived in Corbin, and Hughes had purchased the watch of the defendant. Mr. Day then procured a search warrant of a justice of the peace of Whitley county, for the search of defendant's residence, and Day and his wife, Mrs. Day, went with the officers to the home of defendant, and, upon a search of his residence, they found numerous articles of their property, which had been taken from their home. Among the goods recovered were dresses and other wearing apparel which belonged to Mrs. Day. Some of the dresses and other wearing apparel of Mrs. Day had been materially changed, apparently in an effort to disguise them and to make them fit another person. Mrs. Day further testified that she saw defendant's wife wearing one of her, Mrs. Day's, dresses at a funeral in Corbin. A warrant was immediately issued for defendant, and when the officers arrested him he told conflicting stories about where he got the watch.

O. L. Arnold, justice of the peace who issued the warrant for defendant for knowingly having stolen goods in his possession, testified that defendant tried to prove by him that the watch was the same watch that had been sued for and attached, that a fellow by the name of R. H. Wilson had. A little later he said he got the watch from a jewler in Corbin, and then he finally said he was going to tell the facts about the watch, and said that one Sid McFarland brought the watch to his home and hung it up on a nail and he took it off the nail. Arnold asked defendant if McFarland brought anything else there other than the watch and he said that he did not. Jim Eaton, another witness for the commonwealth, testified that the defendant came to him and wanted him to talk to Mr. Day about making a settlement about the case. Eaton further said that defendant asked him to go to Clay county and see some Penningtons and see if they would swear that he was over in Clay county when Day's house was broken into.

Defendant, testifying in his own behalf, denied breaking into Day's house or having any connection therewith or knowledge thereof. He admits that when he was first arrested he told conflicting stories about where he got the watch, and attempted to explain why

he did so, and said that that was his first knowledge or information that the goods had been stolen and he just told that. He stated that Sid McFarland brought a suitcase to his house, which presumably contained the stolen goods in question. At the time of the trial Sid McFarland was serving a term in the penitentiary for breaking into and stealing goods from a store in London, Ky. Defendant procured an order of court for McFarland's atendance as a witness for him and McFarland was taken from Frankfort to Williamsburg to testify in behalf of defendant. McFarland testified that he took a suitcase of goods to defendant's home, which goods corresponded in description to the same goods which had been taken from Day's house and recovered from defendant's home. McFarland says that the goods were his share of stolen loot that he procured in division with a boy named Setter. Defendant also introduced as witnesses in his behalf, his father, brother, and a cousin. Neither of these witnesses claimed to know any material facts about the case, and their testimony has but little bearing on the case either way.

Summarizing the testimony, we have this situation: Defendant knew that Mr. Day and his family had left their home; the stolen goods were found in his possession; when arrested, he told conflicting stories about where he got the watch; he asked the witness Eaton to see Day and try to effect a settlement with him, and asked Eaton to see some people in Clay county and see if they would swear that he was in Clay county on the night the house was broken into.

The only witness defendant introduced, except himself, who testified to any material facts, was the witness McFarland, his cousin, who at that time was serving a term in the penitentiary for breaking into a storehouse in London, to which charge he had pleaded guilty.

The credibility and weight given the testimony of the witness and the truth thereof is exclusively for the jury. Branham v. Commonwealth, 223 Ky. 233, 3 S. W. (2d) 629; Epperson v. Commonwealth, 227 Ky. 404, 13 S. W .(2d) 247; Lefler v. Commonwealth, 216 Ky. 177, 287 S. W. 569.

Stolen goods found in the possesions of the defendant is sufficient evidence to take the case to the

jury. Hunter v. Commonwealth, 48 S. W. 1077, 20 Ky. Law Rep. 1165; Britton v. Commonwealth, 201 Ky. 92, 255 S. W. 1046.

It is a well-established rule that a peremptory instruction should not be given if there is any evidence, however slight or circumstantial, tending to show the defendant guilty. Commonwealth v. Boaz, 140 Ky. 715, 131 S. W. 782.

The facts taken together with the attendant circumstances presented an issue for the jury and the trial court committed no error in overruling appellant's motion for peremptory instruction.

It is further insisted for appellant that the commonwealth failed to establish the validity of the search warrant, because it did not produce the affidavit upon which the search warrant was issued. It is conceded that the search warrant was regular on its face, but argued that the commonwealth should have also produced the affidavit. If a search warrant is regular and sufficient in its terms upon its face, and issued by an officer authorized by law to issue such writs, it will be presumed that the officer issuing the warrant had proper affidavit authorizing his act, which establishes a prima facie case for the commonwealth, and the burden then passes to the defendant to show that there was no affidavit, or if any, that it was insufficient, just as he assumes the burden of proving any other ground of defense upon which he relies. Terrell v. Commonwealth, 196 Ky. 288, 244 S. W. 703.

Perceiving no error, the judgment is affirmed.