## Murphy v. Commonwealth.
(Decided Oct. 12, 1934.)

A. W. MANN and WAUGH & HOWERTON for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

Opinion of the Court by Morris, Commissioner—Affirming.

The Boyd county grand jury, at the January term, 1934, of the Boyd circuit court, returned an indictment in which Vivian Nickolls, Marie Dunn, and appellant Ed Murphy were jointly charged with the crime of unlawfully, maliciously, and feloniously assaulting W. H. Mirandi with an offensive weapon, with the felonious intent to rob him of money and property of value, an offense denounced by section 1160, Kentucky Statutes. On trial of the case, at the same term, the jury returned a verdict of guilty and fixed his punishment at five years' confinement in the penitentiary, the minimum fixed by the statute. A motion for a new trial was overruled, judgment was pronounced, and appeal prayed and granted.

In the brief for appellant it was strenuously insisted that the court's refusal to give peremptory instruction for defendant constituted reversible error. A supplementary brief for appellant, while not conceding that appellant is not entitled to a reversal on the ground above stated, emphasizes the contention that the court committed error in refusing to grant defendant a new

trial on the ground that the verdict is palpably against the evidence. A statement of the facts is therefore necessary.

The prosecuting witness, a man at the time of the robbery more than seventy-eight years of age, living with a son in Greenup county, is first observed near Greenup avenue and Nineteenth streets in Ashland, early in the evening of December 14, 1933. He had upon his person $157. Apparently walking aimlessly at the time, he approached a house before which a woman was standing; she invited Mirandi into the house, and he walked into the front room and was conducted into a rear room where he and the woman talked for a few minutes. The woman left the room saying that she had to go in the front room for a while. Mirandi sat in the rear room, and during the woman's absence took his money and ran it down into his sock. In a short time the woman returned, but again went back to the front room, saying that she had business in there. She then came back after five minutes' absence and said to Mirandi, "Dad you'll have to vacate, there are some young men coming over from Armco." Mirandi remarked, "All right, no harm done," and left the house. Mirandi testifies that he made up his mind to take a car to his son's home, and with this purpose in mind walked toward Fourteenth street, but later changed his mind, concluding to get a room at "old lady Lynch's," over on Front street. As he started back he noted three automobiles; a couple of women standing near one of them. One of the women asked him where he was going, and he replied that he was going to get a room. She said, "You are drinking and you will be killed the first thing you know." She then told him that she would be glad to give him a room and a nice bed in South Ashland. Mirandi and the two women then got in the car, with a man sitting at the wheel. The car started off and the old man after a time remarked that it appeared to be a long way to where the woman lived, but was assured that they would soon be there. They soon got to a woodland at the top of a hill, where the car was stopped, and apparently becoming suspicious the old man said, "Why this don't look like any residence to me." The woman said, "Get out and rest your feet and legs." He answered that he was not tired, but they said, "Get out anyhow," and one woman reached in and took him by the hand and said, "You had better get out," and he

got out. One of the women had the old man's cane and the other had hold of his arm. They said, "Step right up here, there is a nice place to rest," and led him to what Mirandi terms a "space" which was about 10 feet away from the street. The women insisted upon his sitting down; he remonstrated, and they said, "You give up that money, everything you have got on you," and he testified, "I don't know what all they did do to me, but they took my money off me"; that they hit him over the head with his cane, nearly breaking his nose and his skull, and took from him the $157. As to the automobile and the driver, Mirandi had little to say. Perhaps the only testimony worthy of notice in regard to the car or driver was that when he got out of the car the doors were not closed, and the lights were turned off; that while up on the "space" he heard a motor running, and as he came down he heard the noise of a car running, and he could not see any lights.

In some manner, not explained, Mirandi got back to an unidentified corner, where there were some boys who noted that he was bareheaded and his face "bleeding bad," and upon being asked what was the matter he informed them that he had been robbed, and they offered to call the police. At this point it may be remarked that the old man did not at any time attempt to identify the defendant, nor for that matter the two women, except as to the latter he said that they were the same women who had confessed their guilt in open court, and these women were Vivian Nickolls and Marie Dunn.

On the morning after the robbery of Mirandi, two police officers, Hall and Hays, learned that the car which was used to transport the old man was a taxi numbered 900, and knowing the owner, but not the driver, went to the home of Ed Murphy, which was also the office of the owners of the taxi, located near the point where the old man was picked up. They questioned appellant about the driving of the car on the previous night. Appellant denied that he had driven the car and suggested that it might have been Red McKenzie, one of his taxi drivers. The officers left, and later went back to appellant's home and office, and as they approached appellant met them, and appellant was told that he was wanted up at the station. Appellant accompanied them, and as soon as he got in the officer's car he said, "I told you boys a

damn lie." He remarked that the "parties that done this ain't here, they are gone." He was taken to the station and after a short while accompanied the officers to the scene of the crime. As they went up the hill appellant showed the officers where one of the women had thrown the "poke" or rag, which had held the old man's money. He took them to the exact spot where the robbery occurred, and with his assistance they found Mirandi's hat and cane. The officers fix the distance from the road to a point where there was evidence of a scuffle at 20 or 25 feet. It was also developed by testimony of the officers that later in the night appellant was called to and did drive the two women to Kenova.

Appellant's testimony in part was supported by that of three witnesses, his brother, Floyd Murphy, sister-in-law, Edna Murphy, and a friend, Roy Dills, to such extent as to justify recital only of his testimony. The substance of this testimony was that on the night of the robbery a woman came to his place where he and the above-named parties were playing cards, at about 7:30 or 7:45, and asked for Red McKenzie; Red was not there; she then asked for Curt Murphy, and was told that Curt was running a business at another place. The woman left and came back in 15 or 20 minutes and called for a taxi, and appellant got in the taxi with the woman. She pointed out two parties standing across the street and told appellant to "pick them up." He picked up the old man and the other woman and asked, "Where to," and one of the women said, "Ed, do you know a good place to go out and do some business?" and appellant replied, "No, unless you go outside of the city limits." One of the women then suggested that they go up on Ashland avenue. Appellant drove the car up Ashland avenue, and seemingly without a suggestion as to stopping, backed his car, turned around, and let his fares out. Vivian got out first, the old man next, and the other woman followed. Vivian gave appellant 50 cents, and appellant says he "scooted off," and that the two women with the old man started up the hill, but he did not know where they went. Appellant says he went straight home, and claims that he was gone on this trip about five minutes. He resumed the card game, and after about an hour and fifteen or twenty minutes he received a call to 1905 Greenup avenue, where he again picked up the same women he had driven up Ashland avenue. They wanted to go to Kenova, and asked the

fare; appellant fixed the fare at $2, plus the bridge toll of 20 cents, which was paid. He made the trip, leaving the women at the Kenova Hotel, and went back home. He denies that he got any money from the women save the two fares.

Appellant admits that he told the officers at first that he made no trip with the parties involved; his alleged reason being that as a taxi driver he would injure his business by divulging names, places to where driven, or business of his fares. He denied any knowledge or information of the committed offense. As indicated above, witnesses for the defense fairly corroborated appellant's testimony, however, they do not quite agree on the time elapsing between appellant's departure and return on the first trip. Appellant fixed it at about five minutes; Dill says it was less than fifteen minutes; and Floyd Murphy and his wife fix the time at about eight or ten minutes.

The law is well settled that a peremptory instruction should not be given if there is any evidence, direct or circumstantial, no matter how slight, tending to point to the guilt of the accused. Roaden v. Com., 248 Ky. 154, 58 S. W. (2d) 364. Likewise, that the credibility of witnesses, and weight to be given evidence, is a matter exclusively for the jury. Roaden v. Com., supra, Epperson v. Com., 227 Ky. 404, 13 S. W. (2d) 247. This being true, it may well be concluded that the trial court did not commit error in refusing a peremptory instruction, nor in refusing to ignore the verdict on the ground that it was palpably against the evidence.

Appellant first denied that he had transported the parties involved. Although given opportunity, he did not deny that on the trip up the hill with the police he had pointed out the place where one of the women threw the ''poke'' or rag which had contained the old man's money, an impossible feat had he as claimed, ''scooted'' away from the top of Ashland Hill immediately after the parties got out of the car. Appellant, according to the officers' uncontradicted evidence, had no difficulty in locating the old man's hat and cane. The testimony of the old man to the effect that the car doors were not closed; that there were no lights burning on the car; that he heard a motor, not a car running, are together with those above recited, facts and circumstances which properly took the case to the jury.

Appellant complains that the court committed error in failing to instruct the jury on the law of simple assault. This contention might carry weight if it did not clearly appear that the robbery had been consummated. Counsel for appellant cites on this point Barnard v. Com., 94 Ky. 285, 22 S. W. 219, 15 Ky. Law Rep. 51. In that case the court held that when the evidence tended to show assault only, though the charge was assault with intent to rob, it was necessary to give an instruction on simple assault; but if the intent to rob is established by the proof, the lesser offense is merged into the greater. Here the proof clearly showed not only the intent to rob, but an actual robbery. A failure to give the simple assault instruction was not error.

It is insisted that the court failed to submit to the jury the question as to whether a cane is or not an ''offensive'' weapon or instrument, calling attention to many cases in which it was held error to fail to give such an instruction, where the weapon in question was not per se a deadly weapon, such as a pistol, gun, or knife. This court has frequently held it to be error to fail to submit the question as to whether instruments, the use of which might cause death or injury, and not being per se deadly, were or were not deadly, by reason of the character of the weapon or manner of use; but the question has arisen in cases where death or injury ensued. Counsel for appellant argues that the term ''offensive weapon or instrument'' has the same meaning as ''deadly weapon,'' and that the law making body intended it to have such meaning. The converse of this is perhaps the better conclusion. By the use of the word ''offensive'' it would seem clear that it was the intention of the Legislature to differentiate a weapon or instrument used in attempting robbery from that one which would be likely to produce death or great bodily harm. The statute here under consideration denounces the offense of assault with an offensive weapon with intent to rob. Nowhere in the statute is there any requirement, expressed or implied, that in order to complete the offense there must be a striking, wounding, injuring, or battery of the person intended to be robbed. The gist of the offense is in assaulting, with intent to rob, not the killing or wounding, nor yet the completion of the assault by a battery.

Here it would seem to be clear that there was no prejudicial error in the court's failure to give an in-

struction, such as the one advocated. It may be true that a cane may not be a deadly weapon, one likely to cause death or great injury, but it is a matter of common knowledge that a cane is either an offensive or defensive weapon, if and when occasion for its use, as such, arises, and might put a person in fear, and if used for that purpose it becomes an offensive weapon within the meaning of the statute. It cannot reasonably be said, as counsel strongly urges, that it was the legislative intent to include offensive weapons in the same class as deadly weapons. A wooden or toy pistol might aid materially in consummating a robbery; yet no one would say that either is deadly.

On the contention that the verdict is flagrantly against the evidence little need be said, since it appears that there was sufficient evidence to take the case to the jury, and in such cases the jury is to be the judge, not only of the credibility of witnesses, the weight of the evidence, but the extent of the punishment. It is only in cases where the verdict appears to be without support by proof, or such as to shock the court's conscience, that reversal is authorized. Mullins v. Com., 230 Ky. 624, 20 S. W. (2d) 442; Maggard v. Com., 232 Ky. 10, 22 S. W. (2d) 298.

No objection is made to the instruction submitting the question of guilt of appellant as an accomplice, which was properly given.

Finding no prejudicial error, the judgment of the lower court is affirmed.