# Landrum v. Commonwealth.

(Decided Dec. 18, 1936.)

CHESTER A. BACH for appellant.

B. M. VINCENT, Attorney General, and W. OWEN KELLER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On July 27, 1935, between the hours of 11 and 12 o'clock p. m., the appellant, Carl Landrum, a young man past 21 years of age, killed George Wilson, a boy 16 years of age, on the streets of Jackson, Ky., by striking him in the head with a bottle, from the effects of which he immediately slumped upon the side walk

where he was standing and later died therefrom without regaining consciousness. The physician at the hospital to which he was carried said that he was suffering "from a fractured skull, the bone was fractured and driven down into the brain so that he was unable to talk or know anything that was going on." He then stated that the blow was on the right side of the head and near its top. When asked if he removed or took out any of the skull, his answer was: "Yes sir, I removed seven pieces of bone. Some of them were two inches in length and some not more than a quarter of an inch in length." He then stated that the death of the decedent was produced by the blow administered to his skull.

The appellant and defendant below, Carl Landrum, together with Bill Brown and Herman Howard, were jointly indicted for the murder of Wilson, and at the separate trial of appellant he was convicted and punished by life confinement in the penitentiary. His motion for a new trial was overruled, and from the verdict and judgment pronounced thereon he prosecutes this appeal, urging but two grounds for a reversal, which are: (1) That it was the duty of the court to submit to the jury an instruction defining a deadly weapon within the meaning of the law; and (2) that it was likewise the duty of the court, under the requirement that the whole law of the case should be given in a criminal prosecution, to have instructed the jury upon the offense denounced in section 1166 of our present Kentucky Statutes creating the crime, and fixing the punishment therefor, of willfully or maliciously cutting, striking, or stabbing another with a knife, sword, or other deadly weapon with intent to kill, but from the effects of which the person struck did not die. They will be considered and disposed of in the order named.

1. Ground (1) is no doubt advanced by counsel for defendant upon the mistaken theory that a character of instruction required in a prosecution under section 1166, supra, should likewise apply in the trial of an indictment for homicide when the death was produced by an instrument which might or might not be a deadly weapon within the provisions of that section, expressly requiring that the wounding therein made punishable must have been produced with "a deadly weapon." There is no statute, nor any law so far as we are aware, which

exempts one from punishment for committing a deliberate and malicious homicide when not committed with such a deadly weapon as is contemplated by the section of the statute referred to. If homicide results from an intentionally committed unlawful act on the part of the one guilty of it he is punishable regardless of the means and manner by which he brought it about. The cases relied on by counsel for defendant clearly point out the distinction, some of which are Cosby v. Commonwealth, 115 Ky. 221, 72 S. W. 1089, 24 Ky. Law Rep. 2050; Burgess v. Commonwealth, 176 Ky. 326, 195 S. W. 445, and Owens v. Commonwealth, 187 Ky. 207, 218 S. W. 719. Many others involving prosecutions under the section of the statute referred to might be cited to the same effect and in which a definition of the deadly weapon, unless it was shown that it was indisputably so, should be given, and which is chiefly, if not entirely, because the statute requires that the wounding denounced by that section should be committed, as we have said, with a "deadly weapon." Such a defining instruction, however, is not required where death results from the intentional wounding, thereby converting the crime into one of homicide and not one created by and punishable under the statute. Cases so pointing out the distinction are Maulding v. Commonwealth, 172 Ky. 370, 189 S. W. 251, 253, Conley v. Commonwealth, 225 Ky. 275, 8 S. W. (2d) 415, 417, and Payne v. Commonwealth, 255 Ky. 533, 75 S. W. (2d) 14, 18.

In the Maulding Case the homicide was produced by the defendant beating his victim with his fists and stamping him with his feet. There was also evidence that he may have struck him with rocks, or clubs, or other weapons, from the effects of all of which he died. The court instructed the jury that, if it believed beyond a reasonable doubt that defendant "with his malice aforethought willfully and unlawfully struck with his fists, rocks, clubs, or other weapon, or weapons, and mortally wounded Barney Nickols, from which striking and wounding said Nickols died within a year and a day," then they should find the defendant guilty of murder and punish him as is prescribed by law for that offense. That instruction was complained of on appeal but the criticism thereof was denied, and in doing so the prior case of Thomas v. Commonwealth, 86 S. W. 694, 27 Ky. Law Rep. 794, apparently holding to the con-

trary, was expressly overruled. Later on in the opinion Judge Carroll, writing for the court, said: "In this case there is no question made that Maulding did not kill Nickols, and the undisputed facts show that he beat and bruised and mashed his head and face in such a brutal and horrible manner as to leave no room to doubt that he did intend to kill him. Under these circumstances it would be a travesty on justice for this court to say that an instruction should have been given, telling the jury that they might punish Maulding by a mere fine and imprisonment if they believed he did not intend to kill Nickols." He suggested that there might possibly be cases developed by the evidence which might justify a departure from the rule that he therein approved, but no such facts appeared in that case, nor do they appear in this one.

The same contention was made in the Conley Case, which was a prosecution for homicide and the weapon was a pistol used by defendant as a club. He contended at his trial that the court should have submitted to the jury whether or not the pistol used was a deadly weapon, and we adversely disposed of that contention in this language: "Conley admits striking Hitchcock with the pistol, and it is admitted that from the wound so inflicted Hitchcock died, so whether or not this pistol as used was a deadly weapon, has not only been proven, it has been demonstrated." In the later Payne Case the same contention was made, and in which counsel for appellant (defendant) relied on the case of Cheatham v. Commonwealth, 228 Ky. 765, 15 S. W. (2d) 525; but the contention was overruled and in which (Payne Case) we employed this language:

"It is nowhere intimated in the opinion that the failure to define a deadly weapon in such case is a reversible error. The rule and the reason for it as stated in Owens v. Commonwealth and Burgess v. Commonwealth and other cases do not apply and control in the case of homicide. In every case of homicide the material inquiry is whether the killing was done with malice and the intent to kill and in the manner by or through which it was done, whether the implements used were deadly weapons or not. Maulding v. Commonwealth, 172 Ky. 370, 189 S. W. 251. The reason for this rule is, one must be presumed to intend the consequences of an

act reckless in its character of human life and committed under circumstances calculated to endanger it. If death results, and if the act producing it is willfully and maliciously committed, it is wholly immaterial whether the implements used, which produced death, were deadly weapons or not; the crime is murder. The court properly failed to define the words 'blunt instrument,' as they are used in the indictment and the instruction.''

The holding of those opinions is in strict harmony with common sense and justice, since the taker of human life, when it is done with the proper intent and malice to produce murder, should not be permitted to escape punishment because he did so with a pin and not with a cannon. It is the production of the death of another with the proper criminal intent that the law punishes, and not the act of using in the accomplishment of that result any particular sort of implement or weapon. We therefore conclude that this ground is without merit.

2. The disposition of ground (2) calls for a sufficient statement of the proven facts to develop the foundation therefor. Both appellant and decedent lived near Jackson, Ky., and came to that town on the fatal night, but appellant did not return home in the truck with the two companions who came with him. He and some others associated with him became more or less intoxicated, as did also the deceased in association with another crowd of which he was a member. The two crowds came together in a restaurant at a late hour, and after the members of both had become more or less intoxicated, defendant and his witnesses say that the deceased threw a rock at him and struck him. Following that deceased went to the corner of a junction of two streets and took a standing position by a fire hydrant or a street light post, when defendant approached him and drew the hidden bottle from under his clothing and struck deceased a terrific blow on the head which caused him to immediately fall upon the sidewalk, upon which he was standing, apparently dead. Immediately following that some of the witnesses say that Brown, who was in the vicinity, threw something at the body of deceased as it lay on the sidewalk, which they presumed to be a rock, but no one saw it, and Brown, of course, was not introduced to explain what, if anything, he did on that occasion. No rock was found in the vicinity of de-

cedent's body and, if one was thrown, there is no proof to show the size of it, nor is it positively established that any such missile, whatever it was, struck the body of deceased, although some witnesses say that it did. There was a bruised spot found on some nonvital part of decedent's body which possibly was produced by that missile if one was thrown, since there is no testimony whatever that it, if thrown, struck decedent's head or any other vital part of his body.

The physician, whose testimony we have hereinbefore referred to, stated that the wound on the head, inflicted by defendant in his use of the bottle, was sufficient in itself to and did produce the ensued death of decedent. Of course, there was a contrariety of proof as to the circumstances under which the blow with the bottle was made. Defendant and some witnesses introduced by him said that he had been immediately prior thereto pursued by the deceased and was struck with a rock by him; while the commonwealth's witnesses who were immediately present, either on the sidewalk or in automobiles parked against it, testified to the infliction of the wound in the manner we have stated. Defendant is a much larger person than the deceased, as well as considerably taller, the latter being small even for one of his age, as is shown by the proof.

Defendant, in describing what occurred at the time, first told about the deceased striking him with a rock, and he was then asked:

"Q. Did you have any weapon of any kind? A. I had a bottle.

"Q. I mean anything such as a pistol or knife? A. No, sir.

"Q. What else happened. A. He caught me by the shoulder and I pulled the bottle out of my shirt and hit him and then ran off."

On being asked why he struck deceased with the bottle he answered:

"I was afraid he would hurt me.

"Q. Were you afraid he would kill you? A. Yes."

He does not show that deceased had any weapon in his hand, and he was so much smaller than appellant

it is improbable that defendant anticipated much danger as a result of a fist fight if one had been attempted by deceased. In describing the bottle, this occurred in the examination of the defendant:

"Q. What did you do with the bottle? A. I hit the Wilson boy with it.

"Q. What kind of bottle was that? A. A square bottle. * * *

"Q. Was that a kind of heavy bottle? A. Yes sir.

"Q. Do you know if it had ridges on it? A. No sir, it had bumps on it."

It is now argued, in view of the developed case, as we have so briefly outlined it, that it was the duty of the court to give the instruction contended for, under section 1166, because, as argued, the proof showed that the decedent's death may have been produced by the rock or other missile that some of the witnesses say was thrown by Brown after the appellant had so employed his bottle. But we are not impressed with that argument and would not be inclined to sustain it even if we were without precedent for discarding it. But in the cases of Hopkins v. Commonwealth, 117 Ky. 941, 80 S. W. 156, 25 Ky. Law Rep. 2117, 4 Ann. Cas. 957, and Bennett v. Com., 150 Ky. 604, 150 S. W. 806, 808, 43 L. R. A. (N. S.) 419, a similar contention was made, and we declined to sustain it in the proven circumstances, which were in neither case any more favorable to defendant than appears in this record. In overruling the similar contention made in the Bennett Case we employed this language: "In other days, when the punishment of crime was hampered far too much by legal refinements and abstruse learning, there would have been a place, perhaps, for the argument; but it can find no place now. Reason and justice have superseded these impractical and much abused rules of former days. These brothers, according to the testimony, both shot Lawson in the one encounter. The law will not stop, in such a case, to measure which wound is the more serious, and to speculate upon which actually caused the death. In many such cases the commonwealth would be helpless; for each defendant would go free because it could not be proven against him that his wound was the fatal one. Whether one actually inflicts the fatal

wound, or contributes to or hastens the death in some minor way, he is guilty of the crime. And whether he hastens the death must be for the jury. The instruction was right. Hopkins v. Commonwealth, 117 Ky. 941, 80 S. W. 156 [25 Ky. Law Rep. 2117] 4 Ann. Cas. 957." Those decisions also are in harmony with common sense and justice and meet with our approval. This record produces a gruesome picture and an entirely unnecessary destruction of the life of a youthful boy, whom the great preponderence of the testimony shows was doing nothing at the time to justify appellant's unlawful act.

Appellant, according to our interpretation of the record, had a fair trial, leaving no alternative for us, except to affirm the judgment, which is accordingly done.