## Lewis v. Commonwealth.

(Decided Oct. 5, 1937.)

WILLIAMS & ALLEN for appellant.

HUBERT MEREDITH, Attorney General, and JESSE K. LEWIS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE BAIRD—Reversing.

Tilford and Willard Lewis, brothers, and John D. Reynolds, were indicted in the Breathitt circuit court for the crime of robbery. A separate trial was demanded. The Commonwealth chose to try Tilford Lewis, who was on the 9th day of November, 1936, tried, convicted, and adjudged guilty; his penalty fixed at two years in the state reformatory. He appeals.

He bases his reversal on the following grounds: (1) Because the verdict was contrary to the law and evidence; (2) because the verdict was flagrantly against the evidence and appeared to have been rendered as a result of passion and prejudice against the defendant; and (3) because the court erred in the instructions to the jury in failing to give the whole law of the case. We will consider the first and second grounds together.

The salient parts of the evidence introduced by the Commonwealth is to this effect: On the 7th day of July, 1936, Tilford Lewis and his brother Willard, and John

D. Reynolds, came to the store of Mrs. Stella Jett at Guerrant, near Highland Institution, Breathitt county, Ky., about 1:30 o'clock in the afternoon. They remained in the store for about two hours. Reynolds claimed he wanted to buy a pair of shoes. He took the shoes from the shelf, asked the price of them and was told $2.50, and tried the shoes on, walked and pranced about over the floor, then took them off, put them on the counter without buying. They then left the store. Mrs. Jett closed the door and went to her residence. In about thirty minutes thereafter they came back. At the time they came Mrs. Jett was out in the yard taking in some quilts that she had hanging on the fence. They called to her to come to the store. She asked them what they wanted. It was then about 4 o'clock in the afternoon. Reynolds announced that he had decided to buy the pair of shoes he had looked at when he was there. Before Mrs. Jett would go into the store she claimed that the actions of the appellant, his brother Willard, and Reynolds were of such on their previous visit that she was afraid to go alone, so she called to her daughter, Lucille, a girl of about nineteen years of age, who was in the residence, to go with her to the store, which she did. The three men came in, Reynolds began closing, shutting, and slamming the front door. Mrs. Jett protested, and in answer to her Reynolds said "he wanted to see what kind of mechanical idea she had on the front door." She then asked him to open it and leave it alone. Appellant purchased from her one and one-half dozen eggs. About that time a wagon was heard passing the highway in front of the store. Appellant went to the door and called a small brother that was on the passing wagon and asked him to come and take the eggs he had purchased to his mother, which the brother did. He, his brother, and Reynolds then went out on the front porch and had a secret talk with each other. After their talk Willard remained on the outside on a bench that was there. Reynolds and appellant came back into the store and inquired of Mrs. Jett where her husband was at that time. She told them that he was hoeing corn on the farm. Appellant asked where other members of the family were and she told him that they were working on the farm. Willard Lewis announced to her that her husband had accused him of burning his barn at some time. She denied it. Willard then said that his daddy was the only man in the county that could do anything he wanted

to do and get by with it. Appellant bragged about shooting through the floor of the store on a previous occasion. Mrs. Jett stated that when the three were out on the front porch having their secret talk, she threw her pocketbook behind some goods upon the shelf. When they came back into the store appellant got upon the counter and stretched himself out and looked at her and then looked up and down the shelf. Then got off the counter and stepped to the door again and looked out and announced that it was taking the wagon a long time to get out of hearing, that had just passed. He then returned and got on the counter, his brother Willard, who was out on the front porch, announced that the wagon had gone, and said: "We had better hurry." Also said: "Mrs. Jett has two big guns." Appellant answered and said: "That don't make a bit of difference, she wouldn't use them if she had forty." He then jumped upon the counter and reached to the shelf and got the pocketbook. Mrs. Jett caught hold of it and began to scream or "squall" as she stated; she pulled at the pocketbook hard enough for it to come open but failed to get it away from him. When she was pulling at it, the money bag was in his right hand. He then snatched it from her and put it in his left hand, then put his right hand on his pistol that he had in his overalls. She had seen this pistol or gun before this time when they first came in under his overalls. He then went out of the house; as he did so put the pocketbook with the money in the inside of his overalls. Reynolds, who was with him at the time, said: "G—— D—— you, it will be too bad for you if you holler." Also, said to Lucille, her daughter: "G——D—— you, holler for your daddy and I will kill you." They then went away with the money. It was also in evidence that while they were there appellant took cartridges from his pocket and held them in his hands and put them on the counter before taking the money; the pocketbook contained between fifteen and twenty dollars. This is in substance the testimony offered by the Commonwealth as to the actual robbery. No one was present at the time except Mrs. Jett and her daughter, Lucille.

Appellant and his codefendants deny in toto that they or either of them robbed Mrs. Jett of her money or did anything further than to come into the store and purchase some small articles, cigars, and one and one-half dozen eggs; they claim they paid for them at the

time; denied that they had any weapon or owned any at the time; denied that they were at the store more than one time during the day; denied that they tried to get the pocketbook or cursed her or used any threats towards her or her daughter. They did admit, however, that as the brother of appellant passed he gave him the eggs and told him to take them to his mother; they gave as their reason for being in the village at the time that they came to the post office. They admitted going into the store of Mrs. Jett and stated that when they did so she charged them of being against her in procuring the post office and of interfering with her attempt to secure it; that she became offended, and demanded that the appellant settle his account that she had against him; he told her that he could not do that because he had not enough money; that a dispute arose between Mrs. Jett and appellant over the amount of the account. She then ordered them to leave the store, and that they at once left and went down the road. There was evidence offered affecting the general reputation of Mrs. Jett for morality and also the general reputation for morality of appellant, his brother, and Reynolds. There was no evidence affecting the general reputation of Mrs. Jett for truth or of the daughter for truth or morality. The testimony was conflicting and contradictory.

It is a well-settled principle of law that a peremptory instruction should not be given if there is any evidence, direct or circumstantial, no matter how slight, leading to or pointing to the guilt of the accused. Murphy v. Com., 255 Ky. 676, 75 S. W. (2d) 341; Roaden v. Com., 248 Ky. 154, 58 S. W. (2d) 364. Nor was the verdict flagrantly or palpably against the evidence. "It is only in cases where the verdict appears to be without support by proof, or such as to shock the court's conscience, that reversal is authorized. Mullins v. Com., 230 Ky. 624, 20 S. W. (2d) 442; Maggard v. Com., 232 Ky. 10, 22 S. W. (2d) 298." Murphy v. Com., 255 Ky. 676, 683, 75 S. W. (2d) 341, 344.

The evidence was to the effect that appellant and those acting with him, from their actions, their questions, slamming the door as they did, getting upon the counter, handling and exhibiting cartridges, appellant placing his hands upon his pistol, having under his overalls a weapon that was seen by Mrs. Jett, put her in fear. Before going to the store she called to her daughter, who went with her, and then, to escape the consequences that

she suspected would happen, endeavored to secrete her pocketbook by placing it on the shelf, was enough to constitute such fear, together with the taking of the pocketbook, that authorized an instruction for robbery as denounced by section 1159 of the Kentucky Statutes. " 'Robbery' consists of the felonious and forcible taking from the person of another of goods or money of any value by violence or putting him in fear." Howard v. Com., 198 Ky. 453, 248 S. W. 1059. See, also, Jones v. Com., 112 Ky. 689, 66 S. W. 633, 23 Ky. Law Rep. 2081, 57 L. R. A. 432, 99 Am. St. Rep. 330.

It is true the court gave an instruction under section 1160 of the Kentucky Statutes, which we think should not have been given, because the evidence was hardly sufficient to authorize an instruction for the crime denounced by section 1160. Lamb v. Com., 266 Ky. 561, 99 S. W. (2d) 441; Terrill v. Com., 248 Ky. 613, 614, 59 S. W. (2d) 564.

The indictment in the accusatory part charged the appellant with the common-law crime of robbery. The crime denounced by section 1160 is statutory. It is only necessary under that section to lay the charge in the words of the statute and it is not necessary to allege that it was feloniously done. Under the charge of robbery it is necessary to allege that the crime was feloniously committed, which was sufficiently alleged in the indictment.

Instruction No. 2 is as follows:

"If the jury believe from the evidence to the exclusion of every reasonable doubt, that in this county; on the ——— day of ——— 19— and before the finding of this indictment, the defendant, Tilford Lewis, feloniously, unlawfully, maliciously and in or by a forcible and violent manner, to-wit, by then and there making a violent assault with his hands, fists, upon the person of Mrs. Ezekiel Jett, did demand of and from said Mrs. Ezekiel Jett, money of any value, with the felonious intent to rob said Mrs. Jett, then the jury will find defendant guilty as charged in the indictment and fix his punishment at confinement in the penitentiary for a period of not less than one nor more than two years in their discretion."

Counsel insists that both instructions Nos. 1 and 2

were given by the court to cover the statutory crime denounced by section 1160. We do not agree. No. 2 was given to cover the crime denounced by section 1159, which is robbery. While the indictment contains unnecessary allegations, however, it charges the crime of robbery both in the accusatory and descriptive parts.

We have concluded that it was error to set out in instruction No. 2 the penalty to be from one to two years, when in fact under section 1159, supra, it was from two to ten years, when coupled with the further fact that the court gave an instruction on grand larceny in the absence of any evidence to support such an instruction. The evidence was direct that the amount taken by the defendant did not amount to $20, the sum to be shown to authorize an instruction or a conviction for grand larceny.

We are of the opinion that it was reversible error and to the prejudice of the defendant's substantial rights to give instruction No. 3. Chappell v. Com., 200 Ky. 429, 255 S. W. 90, and cases cited therein. The only authority for an instruction for grand larceny would be to show that the property taken from Mrs. Jett was of the value of $20 or more. If the evidence so authorizes, it will be proper to instruct on grand or petit larceny, which are lower degrees of the crime of robbery. Southerland v. Com., 217 Ky. 94, 288 S. W. 1051. We find no error in the instruction for petit larceny.

For the errors herein set out, the judgment is reversed.

Whole court sitting.