## Dills v. Commonwealth.

Sept. 26, 1941.

A. W. Mann for appellant.

Hubert Meredith, Attorney General, and H. Appleton Federa, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Reversing.

Appellant was convicted of the offense of setting up and operating a game of chance. Kentucky Statutes, Section 1960. The indictment charged that Dills operated a poker game for compensation, "take out," percentage or commission. The jury fixed his punishment at a fine of $500 and confinement in the Reformatory for two years. In grounds for a new trial, among others, it was contended: The court should have sustained his motion for a directed verdict. As we read the evidence, we find that three police officers visited a restaurant operated by Hap Jordan on November 24, 1939. They had a search warrant. Officer Baker testified that

the restaurant part of the building is on the first floor. There was a door leading to the basement which was covered by the back of a booth in the restaurant. To get through the door the booth had to be pushed aside. This the officers did and proceeded to the basement, where they found several persons who were somewhat perturbed by the presence of the officers. Dills began to pick up cards and chips from a table, apparently equipped for use as a poker table. The officer informed Dills that "he would take care of the cards and chips."

There were eight or ten chairs around the table, which latter the officer thought could be "used as a poker table, also to play all kinds of card games." There was an electric floor light and an electric fan, and two or three decks of cards, one opened and one in a box. Dills (admittedly) was putting the cards and chips "up on the wall in some kind of a little apartment." The officer arrested Dills; searched him and found about $53 on his person. The other persons present were searched; they were minus funds.

On cross-examination the officer said that he saw no one playing cards. He said then that there were six or seven persons present at the time Dills was arrested, but none had been called as witnesses for the commonwealth. He says that while he saw no signs of playing poker, he had another reason for making the arrest, and that was "he (Dills) had a reputation as a poker player and running a gambling game." The officer named three or four who were found in the basement, and who were arrested, saying they were "known gamblers." Officer Yates corroborated Officer Baker, though not going into as much detail as had the first officer named.

Dills testifying said that he was at the place of his brother-in-law Jordan on the occasion of the search; that he helped the brother-in-law out on busy days. On this occasion the Chinaman came in and said he had a half pint of whisky, and Owens and the Chinaman went down to the basement. He denied that he had been conducting a card game, or game of chance in the basement, and that at the time the police came there was any sort of card game going on. On cross-examination he said that he saw the police car pull up in front of the place, and he left the table where he was sitting, pushed the booth aside and went to the basement. He did not know how the booth was replaced against the door. He ad-

mits there was "gambling paraphernalia" in the basement, and that he wanted to "get rid of it," though he had never seen any poker game going on in the basement. He had visited the basement frequently; there was a table where the boys would play casino and fantan. He had never played poker down there, and had not operated any poker game.

Sam Lee, the Chinaman, and the others who were present, testified as did Dills. The Chinaman said he went into the restaurant, and into the basement with some fellow named "Kennie" to take a drink. There was no poker game going on. Dills came down the steps and says, "The law came in there, and we all tried to get up steps," and the "law came in then."

Grace Jordan operates the "Hap Jordan" restaurant. She is Dills' sister. She said that Dills helped around the place. She saw him there on the occasion of the raid, and heard some one say, " 'there is the police,' and he jumped and went downstairs, and the police came in and went down in the basement." She said that Roy had not operated a game of chance in her place of business. On cross-examination she said the table in the basement belonged to her, but she was not running a poker table; that she padded it because she sometimes ironed on it. The basement was a rest room, and sometimes seven or eight persons congregated there.

Counsel for the commonwealth strenuously insists that a peremptory instruction should not go where there is any evidence, however slight or circumstantial, tending to show guilt. Citing Roaden v. Com., 248 Ky. 154, 58 S. W. (2d) 364. The strong circumstances there were that the stolen goods were found in possession of the accused, about which he made conflicting stories, and accused had tried to effect a settlement with the owner, and to make an effort to have witnesses build up an alibi.

We have observed the cited case of State v. Hayes, 154 Mo. App. 588, 136 S. W. 8, where to some extent the facts were similar to those in the instant case, and conviction on a gambling charge was upheld. However, it is apparent that the circumstances were much more convincing that the game being played was gambling, rather than one indulged in for innocent pastime.

Here Dills was specifically charged with setting up

and operating a poker game for compensation, etc. The latter part of Section 1960, Kentucky Statutes, seems to make it plain that those engaged in the game, unless they are instrumental in management, operation or control, are not punishable under this section of the statute.

It is true, as contended by the commonwealth, that the actions of the appellant and the others present, and the presence of the cards, chips and tables, present circumstances indicating that some kind of a game had been in progress. But do these circumstances, strong as they are, serve to show that Dills had been or was then operating or managing a game of chance for percentage or commission? Reluctantly we say we think not. In a prosecution for gaming the general rules of evidence governing criminal prosecutions prevail; the burden is laid on the state to prove the charges beyond a reasonable doubt.

In some jurisdictions the law expressly declares that the presence of implements, devices, or appurtenances ordinarily used in gaming is prima facie evidence that the place is used for gaming. See cases cited under "Gaming," Section 51, p. 433, 24 Am. Jur. However, we have no such statute.

In the instant case, admitting every fact which the commonwealth proved, it would still compel us to conclude that the commonwealth has failed to establish that Dills was operating a poker game at which money was won or lost, or that, if operating it, he was reaping a profit. The inferences are strong, but the commonwealth failed to prove the offense denounced and charged. The proof does not nearly measure up to that in Harper v. Com., 93 Ky. 290, 291, 19 S. W. 737, or Palmer v. Com., 240 Ky. 175, 179, 41 S. W. (2d) 936.

Our conclusion is that the case should be reversed with directions for a new trial, and if upon such being had the proof is not strengthened in the particulars mentioned, the jury should be directed to acquit. This conclusion obviates the necessity of discussing the action of the court in entering a nunc pro tunc judgment, which from appellant's standpoint is not of merit. See Jones v. Com., 238 Ky. 607, 38 S. W. (2d) 461; Chapman v. Com., 199 Ky. 204, 250 S. W. 844; Benton v. King, 199 Ky. 307, 250 S. W. 1002.

Reversed with directions.