## Shoemaker et al. v. Commonwealth.

Oct. 16, 1945.

608

Ollie James Cockrell for appellants.

Eldon S. Dummit, Attorney General, and Emmet V. Mittlebeeler, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE REES— Affirming.

Herbert Shoemaker and Retha Anderson have been convicted of the crime defined by KRS 433.150, which reads: "Any person who, with an offensive weapon or instrument, unlawfully and maliciously assaults another, or who in any forcible and violent manner demands any money, goods or chattels, bond, bill, deed or will or other evidence of right, or other thing of value from any person, with an intent to rob or commit a robbery upon him, shall be punished by confinement in the penitentiary for twenty-one years or for life, or by death."

The punishment of each was fixed at confinement in the penitentiary for 21 years.

Mrs. Ruth Callahan operates a general merchandise store in a remote section of Breathitt county near the Lee county line. The store is located on the road leading from Booneville in Owsley county to Jackson in Breathitt county. Two strangers, a man and a woman, appeared at her store about 5:30 p. m. December 4, 1944. There were three other customers in the store at the time. After they left, the woman asked for a package of cigarettes and a box of matches, and tendered a $10 bill in payment. Mrs. Callahan placed the bill in a pocket in the coat she was wearing, and went behind the counter to get the change. Her money was kept in a handbag in a drawer, and she testified she opened the drawer, took out $9.81 in change and handed it to the woman. At this

point the man struck her and knocked her down, and the woman placed adhesive tape over her mouth. The woman then walked behind the counter where the money was located, and she and the man left. The handbag, which contained $1,500 in $20, $10, $5, and $1 bills, had disappeared, as had the $10 bill which Mrs. Callahan placed in the pocket of her coat. About two weeks later Herbert Shoemaker and Retha Anderson were arrested in Cincinnati, Ohio. At the trial their defense was an alibi, but they were positively identified by Mrs. Callahan and two other witnesses as the two strangers who appeared at the store on the afternoon of December 4, 1944. There was other proof tending to connect them with the crime, and it is conceded that the evidence on the question of identity was sufficient to take the case to the jury.

Reversal of the judgment is sought on the following grounds: (1) Incompetent evidence was admitted over appellants' objections; (2) the court erred in refusing to give a peremptory instruction to find the appellants not guilty because there was no evidence that the robbery was accompanied by the use of an offensive weapon; and (3) the words "offensive weapon" should have been defined.

Mrs. Callahan testified in part as follows:

"When I counted the money out to her, the nine $1-bills and the change he grabbed me and threw me down on the floor. They had a roll of tape, great big tape, and she put it over my mouth. He cursed her and asked her if she couldn't do anything, the woman was trying to put the tape over my mouth. She told me to be quiet and they wouldn't hurt me.

"They broke my glasses. He beat me in the head, and while he beat me and held me on the floor this woman went behind the counter and got my money. and left my store. * * *

"I was beat in the head awful. Had an awful bad place over my eyes, the blood was running down my face from these places in my head and down onto my shoulders. My clothes was in a gore of blood."

She was asked this question and made this answer:

"Q. Did you see any kind of weapon there that they used on you? A. As he went out the door I saw a

small dark looking object; it looked like a pistol. He was holding it in his left hand as he went out the door.''

Mrs. Don Wilder, public health nurse of Owsley county, was called and arrived at Mrs. Callahan's home about 6 p. m. She was accompanied by Dr. Gibson and her husband, Dr. Wilder. She found that Mrs. Callahan had received numerous head wounds, was bleeding profusely, was very nervous and in a state of mild shock. She and the two physicians dressed the wounds. She testified in part as follows:

''Q. Describe for the jury where those wounds were located. A. Mrs. Callahan had six or seven head wounds. Dr. Wilder sketched the wounds—

''Defendant objected.

''One large one in the back was very jagged wound. I think there were six or seven of the wounds on her head, all over the head. One or two of them down this way (indicating) looked like they were made with a blunt instrument.

''Defendant objected to 'looked like they were made with a blunt instrument' and the Court overruled the objection, defendants excepted.

''Q. One over her right temple there?

''Mr. Shumate: What do you mean—

''The Witness: That was a dark, larger wound, discolored, enlarged and swollen.

''Q. That the one you mean was made by a blunt instrument in your judgment? A. Yes.

''Mr. Allen (continuing)

''Q. What other treatment did you make of the wounds? A. We merely clipped the hair, cleansed the wounds as well as we could with methylite, sewed up the wounds, took 18 stitches in her scalp; bandaged the head very heavily to keep the wounds from causing hemorrhage.''

It is the statement of the witness that one or two of the wounds ''looked like they were made with a blunt instrument'' which appellants insist was incompetent. Even if it be conceded that the witness was not testify-

ing as an expert, the testimony was competent. She described the wounds in detail, and the only reasonable deduction from the character and severity of the wounds described by her was that they were made by a blunt instrument. It was the deduction that any layman would make. The testimony of an expert was not required. Ordinarily a nonexpert witness must confine his testimony to matters within his actual knowledge and cannot, over objection, express his opinion upon facts that are in the province of, and are to be determined by, the jury, but the statement of a conclusion formed by him from the facts and circumstances detailed to the jury cannot be prejudicial where no other conclusion can be drawn from such facts and circumstances. Under such circumstances, the statement of the witness is one of fact rather than the expression of an opinion. In Edmonds v. Commonwealth, 230 Ky. 725, 20 S. W. 2d 745, 748, witnesses described a substance found on an iron poker and were permitted to express the opinion that the substance was blood. This court said: ''They described it, and we think they were competent, at least after such description, to give their opinions as to what it was.''

There was ample evidence that an offensive weapon was used. This was necessarily inferable from the nature and extent of the wounds. Aside from this, Mrs. Callahan testified that appellant Herbert Shoemaker, as he went out the door, was holding in his hand a small dark looking object which looked like a pistol.

Appellants finally insist that the words ''offensive weapon'' should have been defined in an instruction. Cases are cited in which we have held that the words ''deadly weapon'' should be defined, but we have also held that these words need not be defined where it was shown that the instrument used was indisputably a deadly weapon. Landrum v. Commonwealth, 266 Ky. 655, 99 S. W. 2d 787. Almost any kind of an instrument or weapon may be an offensive weapon under KRS 433.150, and here the instrument used was indisputably an offensive weapon and failure to give an instruction defining the words was not a prejudicial error. Murphy v. Commonwealth, 255 Ky. 676, 75 S. W. 2d 341.

Judgment is affirmed.