## Inman v. Commonwealth.

(Decided March 22, 1927.)

### Appeal from Whitley Circuit Court.

1. Homicide.—In prosecution for the crime of malicious shooting and wounding with intent to kill, instruction authorizing jury to convict defendant of conspiracy to commit this crime held reversible error, where no evidence warranted the instruction.

2. Homicide.—Instruction that, if jury believe beyond reasonable doubt that defendant has not been proven guilty of malicious shooting and wounding with intent to kill or of shooting and wounding in sudden heat or passion or in sudden affray, but have reasonable doubt as to which offense he has been proven guilty of, to convict of latter, held confusing and improper by reason of word "not."

3. Criminal Law.—In prosecution for malicious shooting and wounding with intent to kill, evidence held not to require instruction to acquit defendant, under Criminal Code of Practice, section 242, on ground that state's witness was accomplice in the crime.

B. B. SNYDER for appellant.

FRANK E. DAUGHERTY, Attorney General, and MOORMAN DITTO, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE— Reversing.

Appellant, Red Bill Inman, has been convicted in the Whitley circuit court of malicious shooting and wounding and sentenced to three years' confinement in the pen-

itentiary.  He prosecutes this appeal from the judgment so convicting him.

These facts appear: J. N. Williams and C. W. Goins were railroad policemen for the L. & N. railroad in Whitley county, Kentucky.  On the night of August 31, 1924, they were in the yards of that railroad company at Corbin, and while making their round one of them turned his searchlight into a vacant lot adjoining the yards and discovered three or four men lying on the ground there. The other one also turned his flashlight on the persons and one of them inquired, "What are you doing there?" and someone from the lot responded, "We are just laying here."  One of the policemen then asked: "Where do you live?" and someone responded, "We live at Woodbine." The policemen both testified that thereupon three of the persons in the vacant lot began to shoot at them and fired twenty-five or thirty shots in rapid succession.  Williams testified that one bullet grazed his cheek, causing a slight wound; that one of the bullets passed through his coat sleeve but did not wound him; and the other one testified that one of the bullets passed through one leg of his trousers but did not wound him.  Both of them testified that they recognized Edmond Jones as being one of the persons in the vacant lot, but neither of them testified that Jones did any shooting.  Williams testified that he did not recognize anyone else among those there, but Goins testified that when he saw appellant, Inman, enter the courtroom while the trial hereof was in progress he recognized him as being one of the persons he saw in the vacant lot the night the shooting was done.  It may be remarked that the trial occurred in March, 1926, and Goins does not appear to have seen appellant between the date of the shooting, August 31, 1924, and the time of the trial, and he had never known him prior to either occasion. Both officers testified that about fifteen minutes before this transaction they had seen Edmond Jones leave the railroad yards going toward the vacant lot where the shooting occurred, and that he then was alone.  An officer who examined the vacant lot the following morning testified that he found a single barrel shotgun and a handbag there, neither of which was identified as belonging to appellant, except as hereinafter noted.  The commonwealth introduced Edmond Jones, his wife and his brother-in-law as witnesses, all of whom testified that appellant ate supper at Edmond Jones' home the evening of August 31, 1924, and that shortly after supper Inman's

son and another boy by the name of Helton came there. Shortly afterwards appellant, his son, the Helton boy and Edmond Jones left, intending to go to appellant's home at Chaskey, Tennessee. They testified that appellant on that occasion had with him a handbag similar to that found in the vacant lot the next morning, and that he also had an old-fashioned army rifle with him; that one of the boys who came there shortly after supper also had an army rifle, and that the other had a single-barrel shotgun which looked something like the gun found in the vacant lot the next morning. Jones' wife and his brother-in-law knew nothing further about the affair. Jones testified that they went to the vacant lot near the railroad yards to wait until a freight train going south should leave, intending to ride it to appellant's home. His version of what occurred when the officers turned their flashlight on the four of them lying in the vacant lot is virtually the same as that given by the officers themselves. He testified further that he did not shoot or have any weapon with which to shoot and did not know that the others had any intention of shooting; in fact, he stated that he could not tell who it was that did the shooting.

Appellant's defense was an *alibi*. He testified that on the night in question he was not in Corbin, Kentucky, at all, but attended a dance at the home of one of his neighbors near Chaskey, Tennessee; that he was one of the musicians who furnished the music for the dance; and that the dance lasted all night. Some eight or ten of his neighbors who profess to have been at the dance on the night in question testified for him, all of whom fully corroborate his evidence that he was near Chaskey, Tennessee, and played the fiddle all night for the dance.

The indictment herein charged appellant with malicious shooting, as principal, and as an aider and abettor. It further charged that appellant and persons unknown to the grand jury conspired with each other for the purpose of shooting and wounding Williams, and that as a result of the conspiracy and while it existed and in furtherance of it appellant and the unknown persons did unlawfully, willfully and maliciously shoot and wound Williams with the intent to kill him.

The record is totaly devoid of any evidence tending in the least to establish that the shooting and wounding of Williams was the result of a conspiracy. Appellant and his son and the Helton boy, who, according to the

testimony of the commonwealth's witness, Jones, were present and who, from the evidence for the commonwealth, may be inferred to have fired the shots at the officers on the occasion in question, are not shown ever to have known either of them before; nor is there any fact or circumstance tending in the least to establish that they had conspired together to shoot or wound or kill either of them. Regardless of this fact, the trial court gave the usual conspiracy instruction and authorized the jury to find appellant guilty thereunder.

This court has uniformly held that where there is no evidence authorizing it the submission of the question of defendant's guilt under a conspiracy instruction is prejudicially erroneous. These questions have heretofore been fully considered, and mere reference to the opinions is deemed to be sufficient. See Anderson v. Commonwealth, 196 Ky. 30, Lockard v. Commonwealth, 193 Ky. 619; Pace v. Commonwealth, 170 Ky. 560; and Pharris v. Commonwealth, 198 Ky. 51, 248 S. W. 230.

Instruction No. 3 given by the court reads:

"If you believe from the evidence in this case beyond a reasonable doubt that the defendant Inman has not been proven guilty of malicious shooting and wounding as set out and defined in instruction No. 1, or of shooting and wounding in sudden heat and passion or in sudden affray, but have a reasonable doubt from the evidence as to which offense he has been proven guilty of beyond a reasonable doubt you will give the defendant the benefit of the doubt and find him guilty under instruction No. 2, the lower offense."

This instruction is confusing, by the evident inadvertent insertion of the word "not" between the words "has" and "been" in the first portion of the instruction. Upon another trial the instruction will be worded: "If you believe from the evidence in this case beyond a reasonable doubt that the defendant, Inman, has been proven guilty of malicious shooting and wounding," etc., rather than "has not been proven guilty of malicious shooting and wounding," as it appears in the instruction given. Instructions 1, 2, 4, 6 and 7 appear to be correct. Upon another trial instruction No. 3 will be corrected as indicated, and instruction No. 5, the conspiracy instruction, will be eliminated.

Appellant's contention that the witness, Edmond Jones, was an accomplice and that the trial court erred in not instructing under section 242 of our Criminal Code of Practice, can not be sustained. Appellant denied that he was present and took any part in this difficulty. Jones testified that, although he was present, he took no part in the difficulty and that the other persons present did the shooting without his knowledge, aid, assistance, encouragement or approval. Hence there seems to be no evidence that Jones was the accomplice of appellant.

For the reasons indicated the judgment is reversed and cause remanded, with directions that appellant be granted a new trial, and for other proceedings consistent herewith.