## Strader v. Commonwealth.

(Decided March 6, 1936.)

HUBERT MEREDITH for appellant.

BEVERLY M. VINCENT, Attorney General, and J. J. LEARY, Assistant Attorney General, for the Commonwealth.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

Appellant, Strader, Wood Drake, Otto Bone, and Aaron Mahan were indicted on the statutory charge of robbery, it being alleged that on or about July 3, 1934, they "unlawfully, feloniously and by force and violence, by the use and display of a pistol, a deadly weapon," robbed one Scott Geibel of money and other property. Appellant was placed on trial May 1, 1935. The jury found him guilty and fixed his punishment at confinement in the penitentiary for twenty-one years and he appeals.

Geibel, the prosecuting witness, operated a small eating place out in the county, where he also dispensed intoxicating liquors. His sleeping quarters were in the rear of his business place. He says that about 2:30 a. m., on the date above mentioned, A. M. Strader, Aaron Mahan, and "another fellow" came to his place and rapped on his door. He did not answer, but upon a second rapping he turned on his outside light, and one of the party asked him for something to eat, saying they were hungry. They asked if he had any cheese and he said "No" and then they asked if he had any "dog" and he said he would see. He looked and told them he had a "little piece of dog," and opened the door. After the party came in, Geibel turned to the ice box and Mahan pushed a pistol in his side; the other two men pulled their pistols and told him to stick up his hands, which he did, and they said, "You go back in the other room and lay down on the bed." He obeyed and shortly Strader came back into the room and asked, "Where is the money?" He replied, "In the cash register." He was then ordered to and did go into the storeroom and opened the register. He says Strader took the money and laid it on a showcase and began dividing it, and ordered him back to the bedroom.

Geibel says they took from the register $18 in halves, the same in quarters; about $8 in dimes, and about $6 in nickels, one $5 bill and a $5 bill out of his pocket. They also took eight pints and four or six half pints of whisky; a 21 jewel Elgin watch, which had a chain or fob, two links of which were tied with a thread; a pistol, which he described as a 38 Colt with a blue steel barrel about five inches long, and having some identifying marks. Witness had known Strader for about ten years, and knew Mahan, but did not recognize the third man.

Lonnie Winn testified that on the evening of July 2, before the robbery, Strader was at his home drinking; that he (Strader) told witness they were fixing to rob Geibel. Winn advised him not to attempt the robbery. The day after the robbery appellant came to Winn's home with a pint of liquor, a 38 Colt's pistol, an Elgin watch with a chain, the links of same being tied together with a string or thread. He also displayed some money—a $5 bill, a $1 bill, and some quarters.

John Butler and Mrs. Winn corroborate Lonnie; in addition, Mrs. Winn says she handed Strader a newspaper carrying a story of the robbery, and when she accused him of being in on the robbery he admitted it. Her testimony is corroborated by the testimony of Dora Shutt. Three officers, the sheriff, deputy and a policeman, later arrested appellant and found at his home a 38 Colt's pistol, five-inch barrel, blue steel with one load in it tallying with the one taken from Geibel.

Strader testified that on the night of the robbery he was at his father's home about twelve miles out in the country. He admits that he was at Winn's home on the following morning; that John Butler was there; and that Winn gave him a drink of liquor from a pint bottle. He says that two weeks prior to the date of the robbery Winn asked him to join in a robbery of Geibel, but he refused because, as he says, he would be easily recognized by Geibel. He further says that on the morning succeeding the robbery Winn said to him: "I got old Scott last night. I been laying for him a long time," and then explained to him how the robbery was carried out, and that he had been accompanied by a man named Blake and another by the name of Hurt. Drake and Mahan, jointly indicted, denied any part in the robbery and said that they were not with Strader or Bone on the night of the robbery. McPherson, who lived at the home of Strader's father, said that he owned a 38 Smith Special, 5-inch barrel, and that he had loaned it to appellant, and it was the pistol he had at the time of his arrest. Blake was at Winn's home shortly after the robbery and saw Lonnie with a 38 Colt's pistol, blue steel, and a gold case watch.

Several witnesses for appellant testified to the effect that they saw Geibel shortly after the robbery and he had said that three strangers had robbed him. Another witness said Geibel said that Strader was not in the crowd, and another that Geibel claimed he did not know who robbed him.

The foregoing is in substance all the testimony, and from the recital it may be concluded, as admitted by counsel for appellant, there was enough evidence to take the case to the jury; but he complains that in some respects it does not measure up to what might be

termed conclusive proof of guilt. The weight given the testimony was a matter for the jury.

The testimony of appellant undertakes to present two defenses. One was an alibi and the other that Lonnie Winn was the guilty party, or one of the guilty ones. The alibi is not of much strength or convincing nature. If Lonnie was one of the guilty parties, it would not excuse appellant, unless he came forward with much more convinving proof, but these questions need not be discussed as the jury determines the credibility of the witnesses, and this precludes us from going into a consideration of facts, unless it appears on review of the evidence that the verdict is flagrantly against the evidence, which is not true here.

Counsel for appellant presents for consideration three grounds upon which it is insisted this court should reverse the judgment: (1) Newly discovered evidence, which was of vital and controlling importance; (2) error in giving instructions; and (3) the admission of incompetent evidence.

Taking up the first ground, we find that in support of the motion for a new trial appellant filed the affidavit of Wash Eply, Obie Strader, and James Strader. The first witness states that on or about August 15, 1934, he was in the barn loft at Lonnie Winn's place and in picking up hay he found a box about two feet long, in which there was a pair of ladies' white canvas shoes, and underneath them a scabbard and a 38 blue steel Colt's pistol. He further states that he saw said, pistol in the courthouse May 1, 1935; the same scabbard and pistol which the officers discovered and recovered on a search warrant at the home of Lonnie Winn "yesterday," and the one identified as the pistol said to have been stolen from Geibel at the time of the robbery. He says he never told any one of finding the pistol in Winn's hayloft until after he saw the pistol "this day" and identified it as the pistol he saw in the barn.

Mohon, a constable, says that on May 2, 1935, he went with a deputy sheriff to the home of Winn to execute a search warrant and found in Winn's home a 38 blue steel Colt's pistol, which has later been identified as the one stolen from Scott Geibel some time last year. Obie and James Strader say that they were present when appellant was arrested and saw the pis-

tol which he had at that time, and they knew it was not Geibel's pistol, but one then belonging to McPherson.

The sum total of these affidavits is that on or about May 2, 1935, officers found a pistol, carefully hidden, in Lonnie Winn's hayloft, which witnesses say was the same pistol identified as the one taken from Geibel, and that the pistol found on appellant when arrested was not Geibel's pistol, but one belonging to Foster McPherson. However, the officers who arrested appellant filed affidavits in which they say that the pistol found in Winn's hayloft was the same pistol which appellant had at the time of his arrest, and was shown to Geibel at that time and he identified it as being the one stolen from him.

All this new evidence goes to the identification of a pistol, and not to the question as to who robbed Scott Geibel, and when it is analyzed does not measure up to that quality which would justify us in saying that the court below abused its discretion in not granting a new trial. The officers swear it was the same pistol which Strader had in his possession when arrested in 1934, and that Geibel identified it as being his. It cannot be conceived how, upon another trial, this evidence could or would materially influence the jury. It would tend to connect Winn with the commission of the offense, but would not relieve the appellant, who was a party to the robbery if Geibel's testimony is to be believed. The evidence would be cumulative, only of some portions of appellant's evidence, and we cannot agree that the court committed error in ruling as he did, since the evidence admitted was of impeaching and cumulative character. Hensley v. Com., 241 Ky. 367, 43 S. W. (2d) 996; Lassiter v. Com., 249 Ky. 352, 60 S. W. (2d) 937; Hatfield v. Com., 248 Ky. 342, 58 S. W. (2d) 634; Phillips v. Com., 248 Ky. 643, 59 S. W. (2d) 552; Herron v. Com., 247 Ky. 220, 224, 56 S. W. (2d) 974.

Taking up the third ground, we find that one George Gregory was on the stand for the commonwealth, and testified that "in the morning some time" he saw appellant coming from toward Greenville in a car with two other persons; they gave him a drink of whisky and went on south toward Lonnie Winn's. Objection was made to each and every question and answer of the witness, and it is insisted that the court erred in not rejecting the testimony. It is true that

witness could not fix the exact date, but he did say "it was along about the time of the robbery." This testimony was vague and uncertain as to time, but it was not of great importance one way or the other. The court cannot see that it was of such character as to have influenced the jury, and therefore its admission was not prejudicial. (See cases cited above in Point 1.)

On the second ground for reversal, urged by appellant, we find his complaint to consist of an argument that the court should have instructed the jury that, in case they believed him guilty, to inflict either life imprisonment or death, in their discretion, whereas the court advised the jury that it could return a life or a death sentence, and added the right to give the lighter sentence of twenty-one years.

Counsel argues that since the robbery was committed, and there was no question of the use and display of the pistol, the instruction should have followed the latter part of section 1159a, Kentucky Statutes Supp. 1934.

Section 1159, Kentucky Statutes Supp. 1934, supra, provides a sentence of not less than two nor more than ten years for robbery or burglary. Section 1159a, Kentucky Statutes Supp. 1934, provides that if a person commits acts of robbery as defined in section 1159, "and in committing said act * * * shall use or display any pistol, gun or other firearms or deadly weapon, * * * such person * * * shall be sentenced to death or life imprisonment in the discretion of the jury."

Section 1160 Ky. Stats. Supp. 1934, supra, provides that if any person, with an offensive weapon or instrument, shall unlawfully assault, or in any forcible and violent manner demand any money, goods, or chattels of or from any other person, with intent to rob or commit a robbery upon such person, he shall be guilty of a felony and shall be punished by confinement in the penitentiary for twenty-one years, or for life, or by death in the discretion of the jury.

The indictment here charged that appellant did unlawfully and feloniously by force and violence, with an offensive weapon, a pistol, put in fear Scott Geibel, and did then take and steal his property. The court's charge to the jury follows the language of the indictment, and the charge uses the words, "by the use and

display of a pistol a deadly weapon,'' which are incorporated in the latter paragraph of section 1159a, statute, supra, but this does not necessarily mean that the court instructed the jury, or that the indictment was drawn with an eye single to section 1159 as fortified by 1159a, supra. Even if it were so that the indictment was drawn under section 1159a, and the court instructed under section 1160, the appellant would have little ground for complaint, since the jury were given the right to inflict a twenty-one-year sentence, rather than life or death sentence.

Had the court strictly followed section 1159a, that is in measuring the possible penalty, appellant would have no doubt been here insisting that the court did not give all the law of the case, and on such insistence would have perhaps advanced reasonable argument, since his defense was an alibi; such argument fortified to some extent by reference to section 262 and subsection 6 of section 263 of the Criminal Code of Practice, which provides that degree exists when an attempt to commit a crime and its consummation are both punishable. However, that question is not before us, and will not be discussed further.

Reading the proof before us, there can be little doubt that there was here an assault "with an offensive weapon"; that there was a forcible and violent demand for money, goods, or chattels, nor can there be less doubt that the assault with the offensive weapon, or the forcible and violent demand for money, either or both, were made "with an intent to rob or commit a robbery." That the intent to rob existed along with the assault with a weapon, or the demand by forcible and violent manner, is clearly proven by the fact of the robbery.

So we conclude that the court did not commit error in giving an instruction more favorable than such as insisted upon by appellant and that his substantial rights were not prejudiced by the instruction as given by the court. Holding to this view on objection No. 2, and to those expressed above as to the other two contentions, we must affirm the judgment rendered by the court below.

Judgment affirmed.