## Sewell v. Commonwealth.

Oct. 25, 1940.

W. J. Baxter, Judge.

Joe P. Chenault and Carl Eversole for appellant.

Hubert Meredith, Attorney General, and W. Owen Keller, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Reversing.

The Grand Jury of the Madison Circuit Court indicted Odie Sewell for the murder of Joe Grimes. The first count in the indictment alleged she killed Grimes by striking and wounding him with a deadly weapon, the character of which was to the grand jury unknown. In a second count, the indictment charged her with being present and aiding and abetting some person to the grand jury unknown with the striking and killing of Grimes. The trial resulted in a conviction of voluntary manslaughter and her punishment was fixed at confinement in the penitentiary for eleven years. On this appeal defendant seeks to reverse the judgment because: 1. The evidence was insufficient to take the case to the jury; 2. the instructions were erroneous; 3. newly discovered evidence entitled her to a new trial; 4. the argument of the commonwealth attorney was improper. We find the court erred in the instructions given to the jury as a brief review of the evidence will demonstrate.

The defendant is a widow 43 years of age residing in Richmond with her father and an adult son, and boarding in her home was Buell Kincaid. On Saturday August 14, 1937, defendant, her daughter, the daughter's husband, Kincaid and a couple of children returned to Richmond from a trip to Illinois. The trip was made in the car of her son-in-law, who took along a pistol and Kincaid put a blackjack in the car. Upon returning to Richmond the defendant sent her adult son to a garage to get her car. In passing the store of his brother-in-law, the latter gave Kincaid's black-jack to the son who put it in the glove-compartment in the dash of his mother's car. Upon the trial she testified she did not know the black-jack was in her car.

She had been going with Joe Grimes, a man 60 years of age. He called her by telephone Sunday afternoon and she drove her car to a filling station, picked him up around 6:30 o'clock and they proceeded some eight miles from Richmond to a point known as Kingston where Boyd Jones operated a filling station and a tourist camp at the junction of the Big Hill and Berea highways. On the way to Kingston they stopped at Powell's Tourist Camp to engage a cabin, but all were occupied and they drove on to Jones' camp where

Grimes around 7 o'clock secured a cabin located about 100 feet behind the filling station in this unfenced camp.

The evidence showed defendant and Grimes retired to the cabin, undressed and had sexual relations. Defendant put on her clothes and left some fifteen minutes after the act was consummated, and she was in the cabin with Grimes some 45 minutes or an hour. At the time she left he was disrobed with the possible exception of an undershirt. Upon leaving the cabin, defendant drove by the filling station and testified she told Jones she was leaving Grimes in the cabin, but would be back for him that night or the next morning saying, "they are looking for me at home." Jones testified she informed him she was leaving a man in the cabin but did not say anything about returning that night or the next morning, merely stating, "my man is watching me, I don't want to cause any trouble." Upon leaving the camp she went to her son-in-law's store, remained there a short while, and arrived home around 8 or 8:30 o'clock, locked her car in the garage, retired in about an hour and did not leave the house until the officers came for her after midnight.

While parking his car around 11 o'clock Jones noticed from its lights that the front door to the cabin was open. Upon going to investigate he saw Grimes' body, practically nude, lying on the floor, and he immediately called the officers. When the officers arrived about 11:30, they found Grimes' dead body lying on the floor beside the bed, his head being near a small stove and between the stove and the wall. A search of his clothes hanging near-by on the wall and lying on a chair disclosed a nickel, some chewing tobacco and false teeth. After the body was removed to an undertaker's establishment, an examination of it showed a dent in the top of the head large enough to admit the placing of the tips of the undertaker's three middle fingers. Dr. Hume performed a post mortem on the skull, turned the scalp back, found a "hair-line" fracture, removed a portion of the skull underneath the indentation and there was a small blood clot on the brain. He testified this fracture was sufficient to cause death and that the black-jack removed from defendant's car fitted perfectly in the indentation of the skull of deceased.

The appellant testified she and Grimes had been going together for about four years; that they had never

quarrelled during that time; that she did not strike him and had no connection whatever with his death. Price Tudor, one of her witnesses, testified Grimes suffered from high blood pressure, was short of breath and at times when walking would have to stop and rest.

Complaint is made that the court instructed on murder, voluntary manslaughter, involuntary manslaughter and self-defense, it being insisted there should have been only two instructions given, one covering murder and the other reasonable doubt. Here there were no eyewitnesses and defendant relies upon an alibi. Since there was some evidence of a struggle at the time of the homicide, as deceased's disrobed body was found on the floor of the cabin beside the bed with his head between the wall and the stove, it was the duty of the trial court to instruct the jury on every degree of the crime that might possibly apply in order that the jury might return a verdict consistent with any state of facts it might believe from the evidence was shown to exist. Roberson's Criminal Law, 2d Ed., 1987, Section 1872; Bond v. Com., 257 Ky. 366, 78 S. W. (2d) 1; Bates v. Com., 284 Ky. 1, 143 S. W. (2d) 730. Under the facts shown in this record the court made no error in instructing on the three degrees of homicide and on self-defense. However, the instructions are somewhat inartificially drawn and on another trial we suggest that the court follow the forms appearing in Stanley's Instructions to Juries, Sections 868 and 874, or in Hobson, Blain & Caldwell's Instructions to Juries, Section 742, including therein a separate instruction on involuntary manslaughter in conformity with Section 756. Of course, the instructions will be framed so as to fit the facts in this case. In the reasonable doubt instruction all three degrees of homicide will be mentioned, and the jury will be told that although they may believe from the evidence beyond a reasonable doubt that defendant has been proven guilty, yet if they have a reasonable doubt from the evidence as to the degree of the offense, they will give her the benefit of the doubt and convict her of the lowest offense.

But the court erred to the prejudice of defendant's substantial rights when the jury was instructed that she might be convicted if she aided or abetted another in the killing of Grimes. There is no evidence that she aided or abetted another in killing deceased, or from

which that fact could be deduced, nor is there any evidence showing that any person other than defendant was with deceased on this fatal night. We have repeatedly written that the instructions in every case should present the law applicable to the particular facts proven and that no theory of the case not supported by proof should be covered by the instructions, Steely v. Com., 129 Ky. 524, 112 S. W. 655; King v. Com., 187 Ky. 782, 220 S. W. 755; Golden v. Com., 275 Ky. 208, 121 S. W. (2d) 21. In the total absence of any evidence that defendant aided or abetted another in killing deceased, when the jury was instructed it might convict her as an aider or abettor even though it did not believe she actually killed him, it was given authority to guess her life or liberty away, and for this error the judgment must be reversed. Chappell v. Com., 200 Ky. 429, 255 S. W. 90; Inman v. Com., 219 Ky. 88, 292 S. W. 756; Maxey v. Com., 225 Ky. 663, 9 S. W. (2d) 1001; Whitfield v. Com., 265 Ky. 640, 97 S. W. (2d) 565; Lewis v. Com., 270 Ky. 72, 109 S. W. (2d) 25. There are many cases to the effect that when the evidence does not justify it the giving of an instruction on aiding and abetting, while erroneous, is not reversible error. Griffith v. Com., 250 Ky. 506, 63 S. W. (2d) 594; Hatfield v. Com., 270 Ky. 395, 109 S. W. (2d) 821, are but two of the late ones and reference is made to 6 Kentucky Digest, Criminal Law, Key Number System 814(3), where others may be found. It is easy to conceive a state of facts where the giving of the aider and abettor instruction, though not justified, would not be prejudicial error, as an examination of those cases will disclose, but it is evident that under the facts in the instant case it was prejudicial to defendant when the jury was so instructed.

As this judgment must be reversed on account of the erroneous instructions pointed out in the above paragraph, and as we do not know what the evidence may be on another trial, we refrain from deciding whether or not the evidence in the record before us was sufficient to take the case to the jury or to sustain the verdict. Nor is it necessary for us to consider or discuss the newly discovered evidence since that will be available to the defendant upon another trial. Although the alleged improper argument of the commonwealth attorney is set out in the motion and grounds for a new trial, it is not incorporated in the bill of exceptions, hence it is not

before us and cannot be considered. Saylor v. Com., 57 S. W. 614, 22 Ky. Law Rep. 472; Burch v. Com., Ky., 121 S. W. 996; Engleman v. Caldwell & Jones, 243 Ky. 23, 47 S. W. (2d) 971; Heil v. Seidel, 249 Ky. 314, 60 S. W. (2d) 626.

The judgment is reversed for proceedings consistent with this opinion.