John M. PENNINGTON, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

March 10, 1961.

S. M. Ward, Hazard, A. E. Cornett, Hyden, for appellant.

John B. Breckinridge, Atty. Gen., Wm. A. Watson, Asst. Atty. Gen., for appellee.

STEWART, Judge.

John M. Pennington was convicted in the Perry Circuit Court of the crime of wilful murder. He was sentenced to life imprisonment. On this appeal he argues that the trial court erred to the prejudice of his substantial rights in failing to give appropriate instructions on voluntary manslaughter and on self-defense. The trial court gave only a wilful murder instruction.

The evidence shows that on January 2, 1960, at about ten or eleven in the evening, appellant and three friends were sitting in a booth in a beer tavern located in Perry County near the Leslie County line. Raymond Campbell, who had just come into the tavern and was very drunk, approached the booth and struck out at one of the occupants. Some witnesses say the blows landed on one Seldon Collins and others say they did not. The men in the booth immediately jumped on Campbell and appellant, Pennington, pinned him to the floor and held him there for two or three minutes while Campbell struggled to regain his feet. The proprietor then intervened and asked that Campbell be taken outside. Appellant and one Ocie Shepherd shoved Campbell out the door and accompanied him on the way out. A short while later, a girl came

into the tavern and stated that Campbell was dead or dying. Appellant and Shepherd took him to a hospital where he was pronounced dead on arrival.

The cause of death was knife wounds, one above the left hip, one in the short rib section and one through the heart. Some witnesses to the scuffle stated that appellant had a knife in his hand while he held Campbell to the floor; others saw no knife. No one saw appellant stick a knife into Campbell's body. No. one saw blood on his person while he was in the tavern, although the proprietor later discovered a very small stain, which might have been blood, on the tavern floor.

Appellant testified he had taken part in the fight; had held Campbell to the floor and afterwards shoved him out of the door and had gone out with him; and had later taken him to the hospital. He denied killing him and denied owning, flourishing, or using a knife.

Ocie Shepherd, who was jointly indicted with appellant, but who at the time of appellant's trial was awaiting to be tried separately, testified that appellant had borrowed his knife with the express intention to "take over" the tavern; that appellant had the knife in his hand while he held Campbell to the floor; that he did not see appellant cut Campbell; that appellant showed the knife to him at the hospital and then got rid of it. Appellant claims Shepherd had a knife and tried to use it in another tavern earlier that day.

Ocie Shepherd is a convicted felon. Appellant was on parole at the time of the killing and he was returned to the state prison at LaGrange to finish out his previous sentence. Appellant had never seen Campbell before he approached the booth on the fatal night.

■ The cases from this jurisdiction hold, without exception, that where the accused unlawfully and intentionally killed the deceased, without malice, in sudden affray or in sudden heat and passion, the

offense is designated as voluntary manslaughter, and an instruction on that hypothesis of the case should always be given. In McHargue v. Commonwealth, 231 Ky. 82, 21 S.W.2d 115, 116, it is pointed out that premeditated design or malice aforethought, the prerequisites of murder, and heat and passion are contradictory states of minds and cannot exist at the same time with reference to the act of homicide. The existence of one element excludes the other, and the presence of which state of mind, as the case may be, is usually a question for the jury to determine.

In the instant case, all the evidence adduced by the Commonwealth tended to prove that if appellant killed Campbell he did such an act while they were engaged in a difficulty or altercation in and outside the tavern. It was likewise established by the witnesses for the Commonwealth that such difficulty or altercation was brought about by Campbell. There had been no trouble until he walked over to the table where appellant and three others were seated and began to strike at one or more of them. They came up from the table grappling with him, and he and appellant continued locked to each other until they were upon the floor. Appellant later shoved Campbell out the door and followed after him; but he denied he killed him.

■ In convicting appellant, the jury had to believe that the knife wounds were inflicted by him while he and Campbell were engaged in a struggle or fight. Under these circumstances, had the proper instructions been given, the jury might have determined that appellant acted under an impulse arising out of a sudden affray or in sudden heat and passion, or that he even acted in his necessary self-defense.

■ Where the evidence and circumstances establish the crime of murder or nothing the court is not required to give manslaughter and self-defense instructions, because there is nothing upon which to base such instructions. Thorpe v. Common-

wealth, 301 Ky. 541, 191 S.W.2d 572; Higgs v. Commonwealth, 255 Ky. 547, 75 S.W.2d 21. It is equally true, on the other hand, that if there is any evidence which tends to show that the crime is of less magnitude than murder it is the duty of the court to give instructions on such phases of the case. Benson v. Commonwealth, 290 Ky. 713, 162 S.W.2d 538; Sewell v. Commonwealth, 284 Ky. 183, 144 S.W.2d 223; Shorter v. Commonwealth, 252 Ky. 472, 67 S.W.2d 695, 696. In the last-mentioned case this pertinent statement appears:

"It is fundamental that, if there is any evidence tending to show that a homicide is manslaughter, the accused is entitled to an instruction upon that hypothesis."

The lower court appears to have based its refusal to give instructions on voluntary manslaughter and self-defense upon the theory that the accused testified he did not stab or cut Campbell. This was erroneous reasoning. In McClerkin v. Commonwealth, 221 Ky. 689, 299 S.W. 570, 571, the appellant, McClerkin, denied participation in the crime and notwithstanding such a denial on his part, a conviction was reversed by this Court because of the failure of the trial court to give instructions on voluntary manslaughter and self-defense, this Court stating:

" * * * It is argued on behalf of the commonwealth that appellant was not entitled to such instructions, as he defended on the sole ground that he was in the house and did no shooting. It seems to us, however, that although the accused may deny all participation in the crime, yet, if there be evidence establishing his guilt, and other evidence, whether introduced by the commonwealth or the accused, tending to show facts from which the jury might reasonably infer that the accused acted in self-defense, or in sudden heat and passion, or in sudden affray and without previous malice, these phases of the case should be presented to the jury by appropriate instructions. * * *"

See also Marcum v. Commonwealth, 305 Ky. 92, 202 S.W.2d 1012, where Marcum relied upon an alibi as a defense.

In the instant case, appellant and Campbell had not had any previous trouble; in fact, they met for the first time on the occasion that Campbell was slain, and there was no reason for any ill will upon appellant's part toward Campbell or any desire by him to inflict harm upon Campbell. If the evidence established that appellant did the killing, it also could be believed that such killing was the result of an affray which Campbell provoked or brought about. The jury, under such circumstances, should have had the right to determine whether the killing was done with malice aforethought, in sudden affray without malice, or in self-defense. The trial court, in denying appellant such a right, committed reversible error. See Jones v. Commonwealth, 186 Ky. 283, 216 S.W. 607; Lambdin v. Commonwealth, 195 Ky. 87, 241 S.W. 842.

Wherefore, the judgment is reversed and the case is remanded for a new trial in conformity with this opinion.